## Case No. 6,892.

### HUNT et ux. v. INNIS et al.

[2 Woods, 103.] [1]

Circuit Court, D. Louisiana. Nov. Term. 1875.

RE-ESTABLISHMENT OF A BURNT MORTGAGE — DECREE—EFFECT THEREOF— RECITAL—AS AN ADMISSION.

1. The records in the recorder's office of the parish of Rapides having been destroyed by fire,

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

an act of the legislature was passed providing for re-establishing said records by proceedings before the district judge of the parish. *Held*, that the inscription, in the proper office, of a decree of said judge re-establishing a mortgage, the record of which had been burned, had the same effect as a reinscription of said mortgage.

2. A consent decree made in a case brought to enjoin the enforcement of a mortgage, by which the mortgage was recognized, the rate of interest increased, and the time for the payment of the debt secured thereby extended, and which declared that "this decree is not to operate a novation of the original mortgage, or in any manner affect the validity of the same," did not have the effect of extinguishing the mortgage, nor was the mortgage merged in the decree.

3. A notarial act executed by the parties holding the legal title to a piece of real estate which recited the execution and recording of a mortgage thereon, and the destruction of the mortgage record by fire, recited the re-establishment thereof according to law, admitted a specified sum to be due on said mortgage, which sum the parties by the notarial act agreed to pay in installments, is itself a mortgage, and its inscription is effectual under the law of Louisiana to preserve its lien for ten years.

[In equity. Bill by Samuel B. Hunt and wife against Elizabeth B. Innis and others.] Submitted for final decree upon the pleadings and evidence.

Wm. Grant, for complainants.

Thos. Allen Clarke and Thos. L. Bayne, for defendants.

WOODS, Circuit Judge. This was a bill to foreclose a mortgage executed on the 17th day of October, 1842, on a plantation in Rapides parish, to secure the sum of $20,000 to be paid in ten equal annual installments, beginning on the first day of January, 1843. The mortgage was duly inscribed in the office of the recorder of mortgages for the parish of Rapides, on the day of its date. In 1851, the mortgagors commenced a suit against the mortgagees, in the Rapides district court, for some relief against a proceeding, by way of seizure and sale, instituted by the mortgagees. In that case a consent order was made, by which it was decreed that the injunction granted in the case be dissolved, and that in lieu of damages on the injunction bond, the defendants recover of the obligors in the bond, the sum of $1,000; that the mortgage debt due Hunt and wife, as set forth in the order of seizure and sale obtained by them, and the execution whereof had been enjoined in the case, should bear interest at the rate of eight per cent. per annum from June 2, 1861, the date of the injunction, until payment, instead of five per cent., as allowed in the order of seizure; but the plaintiffs in injunction, Elizabeth B. and John Innis, were to be allowed time for the payment of the mortgage debt and interest as follows, to wit: in five equal annual installments of $1.853 each, the first payable on the first day of January, 1853; and it was declared "that this decree is not to operate a novation of the original mortgage to Hunt and wife, on which the said order of seizure was

obtained, or in any manner affect the validity of the same." This proceeding and decree, which included a copy of the mortgage, was recorded in the office of the recorder of mortgages on December 5, 1851, and also on April 17, 1861. In the year 1864, the court house of the parish of Rapides was burned, with the records of the recorder's office, including the original record of this mortgage, and of the decree above mentioned. On February 28, 1866, an act of the legislature of Louisiana was approved which provided for supplying the loss of the records destroyed in the said fire, by proceedings to be instituted before the district judge of the parish, and by his judgment and decree. [Laws La. 1866, p. 80.] The seventh section of this act declared "that the recording in the proper book of the office of the parish recorder, of a copy of the judgment rendered under the provisions of this act, establishing any deed, bond, mortgage, judgment, or other writing, shall have the same force and effect as the recording of the original deed, bond, mortgage, judgment, or other writing which was destroyed" Pursuant to this statute, a proceeding was instituted before the judge of the district court for the parish of Rapides, to establish the said mortgage, and the said consent decree of 1851, and on June 22, 1866, a decree was rendered by said judge recognizing, establishing, and confirming the mortgage of 1842, the decree of 1851, and the reinscription of said mortgage and judgment made in the recorder's office in 1861, and declaring that they have the same force and effect as when stipulated, granted, confirmed and reinscribed. The mortgage and judgment so established were recorded in the office of the parish recorder of mortgages on July 1, 1866.

The controversy in the case is between the mortgagees named in the mortgage of 1842, the complainants, and certain defendants, who have obtained judgments against the mortgagors, which were recorded in the office of the recorder of mortgages for the parish of Rapides, on the 12th of March, 1868. These judgment creditors have answered and have filed a cross-bill in which they claim that their recorded judgments are the first lien upon the property, and that in fact the complainants have no lien whatever, either as against the mortgagors or any one else. They base this claim on two grounds:

1. That admitting the reinscription of the mortgage of complainants in 1861, it has never since that year been reinscribed, and as the ten years allowed for reinscription expired in 1871, under the jurisprudence of this state, the mortgage has become of no effect even as against the mortgagors, and of course is invalid as against any one else. The claim is that the record of the proceedings and decree of the district court of the parish of Rapides, which contains a copy of the mortgage and the decree of 1851, and the order of the court establishing the same, does not avail as a reinscription. I think this

claim is untenable. The district court for the parish of Rapides re-established the mortgage in haec verba, and this decree, containing an accurate copy of the mortgage as found by that court, was in September, 1866, recorded in the office of the recorder of mortgages for the parish of Rapides. Now the claim is that the decree of the court and this registration of its decree only put the parties in the same position as if there had been no destruction of the records by fire; that the ten years within which the reinscription had to be made commenced to run in 1861, and this term was not interrupted by the registration of the copy of the mortgage and decree of the court establishing it in 1866. But it seems to me that section 7 of the act to establish the burnt records already quoted does give effect to the record of a re-established deed, bond, mortgage, judgment, or other writing, as of a reinscription. It says that the recording in the proper office of any of the documents named shall have the same force and effect as the recording of the original. The recording of the original mortgage would give it effect for ten years. So if we give force to the words of this statute, the recording of the established copy has the same effect. In my judgment, the registration of an established copy would accomplish all the purposes of a reinscription of a mortgage. The object of a reinscription is to give notice to all, that the mortgage debt is not yet paid and that the mortgagee insists on his lien upon the mortgaged premises. This reinscription must be made every ten years. Now does not the registration of a re-established mortgage, under the act of February 28, 1866, give notice that the mortgage is not paid and that the mortgagee insists upon his lien? It seems to me that the registration of the re-established deed is a compliance with the letter as well as spirit of the registration law of this state. The law does not require a vain and useless thing to be done. A mortgagee can reinscribe his mortgage as often as he pleases; every year if he so elects. Now what end could be subserved by requiring this mortgagee, in case he desired to reinscribe his mortgage on the day when he had the re-established record recorded, to have the same record again recorded in the same book, in the same office, and on the same day? Yet if he had done that, I infer that the defendants could not claim that such reinscription was not good for ten years. In my judgment, two reinscriptions on the same day and upon the same record book are unnecessary and one has all the effect of two. I hold therefore that the complainants have not lost their lien from any failure to reinscribe.

The defendants insist,

2. That the mortgage of complainants was merged in the judgment rendered in 1851, and that unless this judgment was revived within ten years, it became void and of no

effect; that no revivor ever took place, and that consequently the lien of the judgment is lost, and that in fact the judgment itself is invalid. This claim is based on the idea that the mortgage was merged in the judgment. But a reference to the decree of the court shows that this was not so. This judgment, which was in fact only a compromise between the parties entered of record, simply extended the time for the payment of the mortgage debt, and increased the rate of interest which the debt was to bear. It then explicitly declares, that this decree is not to operate a novation of the original mortgage, or in any manner affect the validity of the same. This language is entirely inconsistent with the idea of a merger of the mortgage in the decree. No suit could be maintained on this decree without setting out the original mortgage. In my judgment, the mortgage remained in full force and effect notwithstanding this decree, and no revivor of the decree was necessary. The mortgage of itself preserved the lien. But it seems to me that a complete answer to the claim of defendants, that they have the first lien upon the mortgaged premises, is found in a fact yet to be stated. This is, that on the 11th day of September, 1866, Eliza B. Innis, C. A. Innis, Cornelius Innis and John Innis, the parties then holding the legal title to the mortgaged premises, with the consent and concurrence of the mortgagee, executed in due form a notarial act in which they recited the execution of the original mortgage, described with precision the mortgaged premises, recited the destruction of the record of the mortgage by fire in 1864, and the establishment of the record thereof by the district judge of Rapides parish, as hereinbefore set forth, admitted the balance due on said mortgage to be $13,336.28, with interest at eight per cent. per annum, and agreed to pay said sum in installments as in said act set forth. This act does not profess to convey the mortgaged property, but to be a confirmation of the conveyance by the mortgage of 1842. It seems to me, that to all intents and purposes, this act is itself a mortgage, and as it was recorded in the proper office on September 13, 1866, it is still in full force and effect.